# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **HARUN MOHAMED ABDULLE** | **CASE NO. 6:25-CV-02119 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **PAMELA BONDI ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is a Motion for Temporary Restraining Order ("TRO") or Preliminary Injunction [Doc. No. 2] filed by Petitioner, Harun Abdulle ("Petitioner"). Federal Respondents (in their official capacity), Pamela Bondi, Daren K. Margolin, Kristi Noem, Todd Lyons, and Melissa B. Harper (collectively, "Respondents"), oppose the Motion [Doc. No. 10]. Petitioner filed a reply [Doc. No. 11]. After carefully considering Petitioner's filings and applicable law, the Motion is **DENIED**.

### I. Background

#### A. Factual Background

Petitioner is a Somalian citizen who "entered the United States without inspection" on August 28, 2022.[1] Petitioner was arrested, detained "for three days, and then released" under an "Order of Release on Recognizance."[2] He was also issued a "Notice to Appear," which indicated "Petitioner is 'an alien present in the United States who has not been admitted or paroled' and that proceedings were initiated 'under section 240 of the Immigration and Nationality Act.'"[3]

---

[1] [Doc. No. 1, at ¶ 28].
[2] [Id. at ¶ 29].
[3] [Id. at ¶ 31]; [Doc. No. 1-2, p. 1].

Page **1** of **14**

In 2023, Petitioner filed an "application for asylum," and is "awaiting a final hearing date" in that matter.[4] Petitioner lived in Minnesota and worked as a personal care assistant.[5] Around December 1, 2025, while leaving from his work, Petitioner was accosted by officers who asked him if he had a removal order.[6] He answered no and was arrested.[7] He was allegedly not shown an arrest warrant at the time.[8] Petitioner was initially detained in Fort Snelling, Minnesota, and eventually transferred to the Pine Prairie Detention Center in Pine Prairie, Louisiana.[9]

Petitioner filed a Petition for Writ of Habeas Corpus ("Habeas Petition"), arguing his detention violates the Immigration Nationality Act, the Fifth Amendment's guarantee of due process, and federal immigration regulations.[10] He also sought declaratory relief on similar grounds.[11] Petitioner also filed this Motion, arguing he is entitled to preliminary relief based on the same legal arguments.[12]

The parties briefed all relevant issues, and the matter is ripe.

### B. Statutory Background

Petitioner's claims involve a complex web of immigration laws, so the Court lays the relevant statutory provisions at the outset.

Section 1225(b)(1)(A)(i) authorizes expedited removal "without further hearing" for an "arriving" alien whom an immigration officer finds "inadmissible." 8

---

[4] [Doc. No. 1, at ¶ 33].
[5] [Id. at ¶¶ 1, 35].
[6] [Id. at ¶ 36].
[7] [Id.].
[8] [Id. at ¶ 37].
[9] [Id. at ¶ 40].
[10] [Id. at ¶¶ 84–96, 102–111].
[11] [Id. at ¶¶ 97–101].
[12] [Doc. No. 6, pp. 9–29].

U.S.C. § 1225(b)(1)(A)(i). Section 1225(b)(1)(A)(iii) authorizes expedited removal "without further hearing" for an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior." *Id.* § 1225(b)(1)(A)(iii). So, (1) aliens who are found inadmissible on arrival or (2) aliens who were not admitted or paroled into the United States and cannot show they were physically present for at least two years may be removed without a hearing under § 1225(b)(1).

Section 1225(b)(2) requires that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a." *Id.* § 1225(b)(2). Any "alien present in the United States who has not been admitted or who arrives in the United States" is an "applicant for admission" under § 1225. *Id.* § 1225(a)(1). Section 1101 defines "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). So, aliens who are present in the United States but did not lawfully enter after inspection and authorization may be detained and removed under § 1225(b)(2).

Section 1226, on the other hand, provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a)(2)(A). Aliens arrested pursuant to § 1226, pending a decision on whether they are to be removed,

may be released on bond or conditional parole. *See id.* § 1226(a)(2). But § 1226(c) restricts the Attorney General from releasing aliens who committed certain offenses. *Id.* § 1226(c)(1). So, under § 1226, any alien—not just applicants for admission—may be arrested on a warrant from the Attorney General and detained until they are adjudged removable but may receive bond hearings unless the law says otherwise.

## II.   Law and Analysis

### A.   Standard of Review

Rule 65 authorizes federal courts to issue TROs and preliminary injunctions. FED. R. CIV. P. 65. Where, as here, an adverse party has notice, a TRO is treated as a preliminary injunction. *See Butts v. Aultman*, 953 F.3d 353, 361 n.6 (5th Cir. 2020) ("If there is an adversary hearing or the order is entered for an indeterminate length of time, a 'temporary restraining order' may be treated as a preliminary injunction."). Then, courts must apply the four-part test the Supreme Court laid in *Winter v. Nat. Res. Def. Council, Inc.*, to determine whether to issue a preliminary injunction. 555 U.S. 7 (2008). Parties "seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, *and* (4) that an injunction is in the public interest." *Id.* at 20 (citation modified).

### B. Petitioner is not Entitled to Preliminary Relief

#### 1. Petitioner is Unlikely to Succeed on the Merits

##### a. Statutory Claim

Petitioner argues he is subject to § 1226, not § 1225, and, therefore, eligible for a bond hearing.[13] To fall under § 1225(b)(2), an alien must be (1) present in the United States, (2) not admitted, and (3) found inadmissible by an immigration officer. 8 U.S.C. § 1225(b)(2). Petitioner is present in the United States, and he concedes he entered the United States illegally,[14] i.e., without "inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Therefore, he was not "admitted" into the United States. *Id.* Finally, ICE detained Petitioner because he is inadmissible since he has no documentation.[15] Thus, Petitioner is an "applicant for admission" under the plain text of § 1225. *Id.* § 1225(a)(1).

Petitioner, nevertheless, avers § 1226 governs the detention of all "noncitizens in removal proceedings who were not apprehended on the border."[16] He specifically argues § 1225(b)(2) requires, in addition to the above elements, that "an alien [be] seeking admission."[17] True, "the overwhelming, lopsided majority" of district courts have interpreted § 1225(b)(2) this way. *Barco Mercado v. Francis*, ___ F. Supp. 3d ___, No. 25-CV-6582, 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). This Court is nevertheless unconvinced.

---

[13] [Id. at pp. 9–23].
[14] [Doc. No. 1, at ¶ 28].
[15] [Id. at ¶ 36].
[16] [Doc. No. 6, p. 13].
[17] [Id. (quoting 8 U.S.C. § 1225(b)(2))].

Page **5** of **14**

As a threshold matter, even if a vast majority of district courts rule on an issue one way, they may sometimes get the law very wrong. *See, e.g.*, *Trump v. CASA, Inc.*, 606 U.S. 831, 840 (2025) (declaring federal district courts do not have authority to issue universal injunctions despite its widespread use). Second, neither Petitioner nor the other courts that ruled in favor of Petitioner's position clearly demark what it means for an alien to be "seeking admission." Also, when is it triggered—the exact moment an alien enters? The first month they are present? The first year? The line-drawing problems with Petitioner's stance are too significant to brush aside.

In contrast, finding that § 1225(b)(2) applies to Petitioner more accurately follows the letter of the law. To "seek" and to "apply for" are synonyms. *Apply (for)*, Merriam-Webster (last visited Jan. 20, 2026).[18] With this understanding, giving "alien seeking admission" and "applicants for admission" different meanings amounts to "perform[ing] linguistic gymnastics in order to upset the plain language of Congress as it exists today." *St. Martin Evangelical Lutheran Church v. S. Dakota*, 451 U.S. 772, 791 n.6 (1981) (Stevens, J., concurring).

The Court's interpretation is buttressed by other provisions of § 1225. Section 1225(a)(3) states all aliens "who are applicants for admission *or otherwise seeking admission* or readmission to . . . the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). "Otherwise" means "in a different way or manner"; "in different circumstances"; and "in other respects." *Otherwise*, Merriam-Webster (last visited Jan. 20, 2026).[19] This clarifies that Congress deems

---

[18] https://www.merriam-webster.com/thesaurus/apply%20for.
[19] https://www.merriam-webster.com/dictionary/otherwise.

"applicants for admission" are, solely by their status, "seeking admission" in § 1225(a)(3). And it is a basic "rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012) (citation modified). So, as an "applicant for admission," Petitioner is also "seeking admission" for the purposes of § 1225(b)(2). Therefore, the plain text of § 1252(b)(2) suggests that it applies to Petitioner. His other contrary arguments are unconvincing.

First, Petitioner argues the administrative record reflects that Respondents arrested Petitioner pursuant to § 1226.[20] In this habeas proceeding, Petitioner bears the burden of proving his detention is unlawful. *See Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025). Petitioner points out the fact that his Order of Release on Recognizance cites § 1226 as the basis for his 2022 detention and release.[21] He then cites *Jose J.O.E. v. Bondi*, wherein another district court ruled that "there is no 'authority supporting the idea that [Respondents] possess[ ] th[e] unilateral right' to change between 8 U.S.C. §§ 1225 and 1226."[22] But in *J.O.E.*, the respondents arrested and detained that petitioner "on a warrant . . . explicitly pursuant to § 1226(a)." *Id.*

Unlike the petitioner in *J.O.E.*, however, Petitioner has not shown a warrant based on § 1226(a) that Respondents used to arrest and detain him. He, instead, relies on the 2022 Order of Release on Recognizance.[23] But this is insufficient. The Order of Release on Recognizance only shows Petitioner was initially arrested and detained

---

[20] [Doc. No. 6, p. 10].
[21] [Id. at p. 11].
[22] [Id. (quoting 797 F. Supp.3d 957, 970 (D. Minn. 2025))].
[23] [Id.].

Page **7** of **14**

pursuant to § 1226(a). And he was then let go, which ended that proceeding. That Order of Release on Recognizance does not—and cannot—influence his current detention. As such, Petitioner has not met his burden of showing the record supports his contention that Respondents arrested him in December 2025, pursuant to § 1226(a) and later switched to § 1225(b)(2).

Second, Petitioner argues canons of construction favor his interpretation. Specifically, he argues adopting Respondents' interpretation makes (1) the phrase "alien seeking admission" in § 1225(b)(2) and (2) the Laken Riley Act superfluous.[24] Where, as here, the statutory "language is plain and unambiguous," resorting to canons of construction is "absolutely uncalled for." *Territory of Hawaii v. Mankichi*, 190 U.S. 197, 223 (1903). As stated above, § 1225(b)(2)'s plain and unambiguous language does not require applicants for admission, like Petitioner, to do more to seek admission.[25] So, Petitioner's first superfluity canon-based argument fails.

Petitioner's second superfluity canon-based argument also fails. Congress passed the Laken Riley Act to require mandatory detention of "aliens" who (1) are inadmissible and (2) who engaged in "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). As a threshold matter, § 1226(c) would not apply to Petitioner since there is no record that he committed or admitted to committing any of the crimes listed in § 1226(c)(1)(E)(ii). As such, there is a question on whether Petitioner has standing to make such an argument.

---

[24] [Id. at pp. 20–21].
[25] *See supra* notes 18–19 and accompanying paragraphs.

Page **8** of **14**

Even if Petitioner has standing, applying § 1225(b)(2) to individuals like Petitioner would not make the Laken Riley Act amendments to § 1226(c). Section 1226(c)'s use of "any alien who is inadmissible" includes those who are not "admitted or paroled," *id.* § 1182(a)(6)(A), those who were admitted "by fraud or willfully misrepresenting a material fact," *id.* § 1182(a)(6)(C), and those without sufficient documentation. *Id.* § 1182(a)(7). True, reading § 1225(b)(2) to cover Petitioner would make the first category redundant, but not the others. And when there are two ways to read a law—one that follows the plain meaning but creates surplusage and another that ignores the plain meaning to avoid surplusage—the plain meaning must control. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). Finally, the canon against superfluity is weak when used with two pieces of legislation that were enacted years apart. *See United States v. Smith*, 100 F.4th 1244, 1250 n.6 (10th Cir. 2024). Since Congress passed the Laken Riley Act last year—decades after it enacted the other provisions—the canon against superfluity is weak here. Accordingly, Petitioner's second superfluity canon-based argument also fails.

Third, Petitioner avers Respondents interpretation—that § 1225 and not § 1226 applies—conflicts with "thirty years of administrative practice."[26] For "years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 n.6 (BIA 2025). Such longstanding practices "can inform a court's determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). But even "a long-

---

[26] [Doc. No. 6, p. 19].

established practice" cannot justify contradicting a law's plain, unambiguous text. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015). And the "weight" of an administrative agency's judgment depends "upon the thoroughness [of] its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). A 1997 interim rule declared: "Despite being applicants for admission, aliens who are present without having been admitted or paroled" will be "eligible for bond." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). That interim rule, however, offered no reasoning for its nontextual position, so the Court accords it little to no weight.

Fourth, Petitioner cites the legislative history of § 1226.[27] The Court resists any temptation to indulge. Using legislative history is problematic since it is like "entering a crowded cocktail party and looking over the heads of the guests for one's friends." *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring). When interpreting legislation, "we aspire to be 'a nation of laws, not of men.' This means (1) giving effect to the text that lawmakers have adopted and that the people are entitled to rely on, and (2) giving *no* effect to lawmakers' unenacted desires." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 29 (2012).

To sum, Petitioner falls under § 1225(b)(2) based on the plain text of that law, and none of Petitioner's arguments to the contrary are persuasive.

Petitioner also seeks to distinguish this case from *Topal v. Bondi*, wherein this Court first found *Yajure Hurtado* persuasive.[28] Petitioner's arguments for

---

[27] [Doc. No. 6, pp. 22–24].
[28] [Doc. No. 11, pp. 9–11 (citing No. 1:25-CV-1612, 2025 WL 3486894, at *2 (W.D. La. Dec. 3, 2025))].

distinguishing his case from *Topal*, however, are the same ones this Court found unpersuasive in the preceding paragraphs. Specifically, Petitioner argues that *Yajure Hurtado* conflicts with prior agency practice,[29] *Yajure Hurtado*'s interpretation makes the rest of the statute superfluous,[30] and the record here is different from that in *Topal*.[31] Since the Court already analyzed why these arguments are unpersuasive, the Court does not dwell deeper on Petitioner's attempt to distinguish *Topal*.

### b. Constitutional Claim

Petitioner argues that even if he is detained under § 1225(b)(2), "mandatory detention, absent a bond hearing, is unconstitutional as applied to him."[32] He argues under *Mathews v. Edridge*, the Court should find he is entitled to a bond hearing, and order Respondents provide him with one.[33]

The "Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 517 (2003). *Mathews* sets a three-factor balancing test for courts to consider when resolving procedural due process claims: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest . . . and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

---

[29] [Id. at p. 9–10].
[30] [Id. at p. 10].
[31] [Id. at p. 11].
[32] [Doc. No. 6, p. 24].
[33] [Id. at p. 25 (citing 424 U.S. 319 (1976))].

As to the first *Mathews* factor, Petitioner asserts a "substantial interest in physical liberty."[34] But in *Denmore*, the Supreme Court reiterated its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." 538 U.S. at 526. Petitioner falls under the explicit terms of § 1225(b)(2) and is detained under that provision to be removed pursuant to § 1229a. As such, although Petitioner has a substantial interest in liberty, he may nevertheless be detained for the "limited period necessary" to effectuate his removal. *Id.* So, this factor does not heavily favor Petitioner.

As to the second and third factors, Petitioner's argument effectively regurgitates his statutory claim.[35] Specifically, he argues that the bond hearings, which "until recently, were afforded with regularity," ensures only "flight risk and dangerous[]" individuals will be detained.[36] Put differently, Petitioner fails to make, much less prove, that he is entitled to constitutional relief independent of his statutory claim. Since the Court already deems his statutory claim is unlikely to succeed, it does the same for his intertwined constitutional claim.

Petitioner also argues that the Court should not apply the "limitations on due process described in *DHS. v. Thuraissigiam*, 591 U.S. 103 (2020)."[37] Since the Court concludes Petitioner has not made a colorable due process claim even without *Thuraissigiam*'s limitations, the Court does not address Petitioner's argument that *Thuraissigiam* does not apply. "If it is not necessary to decide more, it is necessary

---

[34] [Id.].
[35] [Id. at pp. 26–28].
[36] [Id. at p. 27 (citation modified)].
[37] [Id. at p. 28].

not to decide more." *PDK Labs., Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment).

### 2. Petitioner has not Shown Irreparable Harm

Respondents argue Petitioner's Motion also fails because he cannot show irreparable harm.[38] Specifically, they argue Petitioner's Motion is duplicative of his Habeas Petition and he has not shown anything further that requires the Court releases him at this stage of the proceeding.[39] This Court has previously adopted this position in numerous similar cases. *See Bueso v. Noem*, No. 3:25-CV-1505, 2025 WL 3707316, at *2–3 (W.D. La. Dec. 22, 2025); *Gonzalez v. Noem*, No. 3:25-CV-2117, 2025 WL 3755544, at *2 (W.D. La. Dec. 29, 2025); *Guizar Lozano v. Ladwig*, No. 1:25-CV-1611, 2025 WL 3765945, at *7–8 (W.D. La. Dec. 30, 2025). As such, Petitioner has not shown irreparable harm, and so, she is not entitled to preliminary relief.

Petitioner counters that those decisions are mistaken because the Fifth Circuit holds "when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."[40] But here, Petitioner has not shown Respondents deprived Petitioner's constitutional rights. As such, he has not made any "showing of irreparable harm." *Book People*, 91 F.4th at 341.

### 3. Balance of Equities and Public Interest

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Clarke v. Commodity Futures Trading Comm'n*,

---

[38] [Doc. No. 10, pp. 4–6].
[39] [Id. at pp. 2–3, 5].
[40] [Doc. No. 11, p. 5 (quoting *Book People v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024))].

Page **13** of 14

74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The government and the public have a strong interest in immigration laws being adequately enforced. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). And Petitioner has not shown he is likely to succeed on any of his theories that his detention is unlawful. Thus, Petitioner's proffered public interest—requiring "the Government [to comply] with its own laws"—is not seriously threatened.[41] As such, *Winter*'s third and fourth factors also favor not granting Petitioner a TRO.

### III. Conclusion

For these reasons,

**IT IS ORDERED** that Petitioner's Motion for a TRO or a Preliminary Injunction [Doc. No. 2] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Habeas Petition [Doc. No. 1] is referred to the Magistrate Judge.

MONROE, LOUISIANA, this 22nd day of January 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[41] [Doc. No. 6, p. 30].